J. M. MOYER and others *vs.* RICHARD H. MITCHELL.

*Construction of a Covenant in a Lease to keep a Cottage in Perfect Repair and Tenantable Condition.*

In 1859, the appellee leased at a nominal rent for a term of twenty years, renewable, a cottage at Point Lookout, intended as a bathing place. By the terms of the lease the appellee's right was to become forfeited, if the cottage was not " kept in perfect repair and tenantable condition for the occupation of respectable persons frequenting said bathing place," during any bathing season. The appellee occupied the cottage during the bathing season of 1860. During the war, United States troops occupied the hotel and all the cottages at Point Lookout, and left them in bad condition; and the place was not afterwards regularly re-opened and kept as a bathing place, though the hotel was kept for three seasons. Appellee's cottage was occupied for a time by his tenants. In 1877, the appellants, owners of the fee of the property, finding that the cottage was not " kept in perfect repair and tenantable condition," and that it had been suffered to be out of repair for more than one bathing season during the term, (excluding the time the property was occupied by United States troops,) entered upon the property and caused the cottages thereon to be torn down. In an action of trespass *q. c. f.*, brought by the appellee against the appellants, it was HELD:

1st. That the covenant on the part of the appellee to keep the cottage in " perfect repair and tenantable condition," was absolute; and that as the evidence showed that this covenant had not been performed, he could not recover.

2nd. That this covenant was not dependent upon any covenant on the part of the lessor to keep the hotel and grounds in good order and repair suitable for a bathing place; and that there being no such covenant on the lessor's part in the lease, none could be implied; though it was doubtless his intention to do this, as appeared from the recital in the lease.

APPEAL from the Circuit Court for St. Mary's County.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered two prayers which are stated in the opinion; as are also the four prayers

offered by the defendants. The Court, (MAGRUDER and FORD, J.,) granted the plaintiff's prayers and rejected those of the defendants. The defendants excepted, and the verdict and judgment for $276.62 being for the plaintiff, the defendants appealed.

The cause was argued before BARTOL, C. J., BRENT, MILLER and IRVING, J.

*D. S. Briscoe, Benjamin G. Harris* and *J. M. Moyer,* for the appellants.

*William M. Merrick,* for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

The decision of this appeal depends upon the construction of the lease made by William Cost Johnson to the appellee, dated June 9th, 1859, as follows:

"This lease, made this ninth day of June, A. D., 1859, between William Cost Johnson of Frederick County, in the State of Maryland, of the first part, and Richard H. Mitchell of Baltimore City, in the State of Maryland, of the second part: Whereas, the said William Cost Johnson, is the owner in fee of a tract of land at Point Lookout, in St. Mary's County, State of Maryland, upon a portion of which he has established a watering or bathing place, and has caused it to be laid off in blocks and other ornamental shapes, with lots and avenues or common ways, for the use of the same, as will appear by inspection of said grounds: and whereas, it is his object that said grounds shall be kept in good order, and the said cottages in perfect repair: Now this lease witnesseth, that for and in consideration of the premises, and of the rent and covenants hereinafter reserved and contained, the said William Cost Johnson doth lease unto the said Richard H. Mitchell,

his personal representatives and assigns, all that lot of ground situated at Point Lookout, in St. Mary's County, State of Maryland, fronting twenty-three feet upon Chesapeake avenue, and running back for the whole width thereof twenty-five feet, which has a cottage erected thereon, numbered twenty, in the block known as "Block A-A," and the said cottage, together with the appurtenances thereto. To be held by said Richard H. Mitchell, his personal representatives and assigns, for the term of twenty years, beginning on the day of the date of these presents, and ending on the tenth day of June, A. D., 1879, yielding and paying unto the said Johnson, his heirs and assigns, the rent or yearly sum of one cent, over and above all deductions for taxes, to be levied or assessed on said demised premises; provided that the house or cottage erected on said lot shall be kept in perfect repair and tenantable condition for the occupation of respectable persons frequenting said bathing place, by the party of the second part hereto, his personal representatives or assigns; and if the said party of the second part, his representatives or assigns, shall suffer the cottage so leased to be out of repair as aforesaid, for the period of any one bathing season during the continuance of said term, then all right and title of property or possession under this lease, or any future renewal thereof, shall come to an immediate end, and the party of the first part, his heirs or assigns, shall be remitted to all his original right, title and estate in said property, freed from the term of years for which it is hereby demised, or to be created by any renewal hereof, in the same manner as if this lease or a renewal had never been made. And the said party of the first part hereby covenants to and with the party of the second part, that on payment by the said lessee of the rent reserved, and the performance of all covenants and conditions by him to be performed, that he, the said party of the first part, will warrant specially the property

hereby leased, and that any time during this demise, on payment of five dollars to him, renewal fine, he will exe-cute and deliver to the said party of the second part, upon his request therefor, a new lease for the above demised ground or lot, together with the buildings thereupon, for another term of twenty years, to commence on the expira-tion of this lease, subject to the same rent, with the same conditions and covenants, so that the demise hereby created may be renewable and renewed from time to time forever. And the party of the second part hereby further covenants to and with the party of the first part, that the said lot of ground, and the cottage thereupon erected, hereby conveyed, or any part thereof, shall not be occu-pied nor used for any unlawful traffic or any disreputable business or purpose of any description or character what-ever, nor shall any but respectable persons be at any time allowed to occupy the said cottage or grounds." Which lease was duly executed, acknowledged and recorded.

It appears by the proof that the appellee occupied the cottage described in the lease during the bathing season of 1860, and has not occupied it since. In 1862 a part of the United States army took possession of all the houses and cottages at Point Lookout, and occupied them till the late war was over in 1865. When restored to the owners, "the hotel and other buildings were left in bad condition, the hotel was not properly repaired after the war, nor was the place regularly re-opened and kept as a watering place. The hotel was kept by James R. Milburn for three seasons, of 1874, 1875 and 1876, but not in the manner it had been kept before the war." The appellee rented his cot-tage to Mr. Hayden, or as he states in his testimony, allowed Mr. Hayden to occupy it on condition of keeping it in good repair, who occupied it for two years, after which it was rented to Milburn on the same terms, who was in possession of it up to a short time before it was destroyed.

The hotel was destroyed by fire in March 1877.

The appellants, who are admitted to be the owners in fee of the property, finding that the cottage was not kept in perfect repair and tenantable condition as required by the lease, and that the same had been suffered to be out of such repair for more than one bathing season during the term, in June 1877, re-entered upon the property and caused the cottages thereon to be torn down; and for this alleged trespass this suit was brought.

The principal question in the case arises upon the second prayer of the appellee which was granted, whereby the jury were instructed that if they find that the property at Point Lookout was taken possession of and occupied by the United States troops during the late civil war, and that after being restored to the owners of the same, the hotel and grounds were not kept in proper repair, and suitable condition for such a watering or bathing place as had been established prior to the war; then the appellee was under no obligation to keep his cottage in perfect repair and tenantable condition, and they must find a verdict for the plaintiff.

The instructions asked for by the appellants, in their *third* and *fourth* prayers, which were refused, assert the proposition, that if the cottage of the appellee was not kept in perfect repair, but was suffered to be out of repair for the period of any one bathing season during the term of the lease, excepting from said term the time of the occupancy of the premises by the United States Government, then the plaintiff is not entitled to recover.

By the terms of the lease the right of the lessee became forfeited, if the cottage should be suffered to remain out of repair during any bathing season. No question arises as to the obligation of the appellee to perform this covenant or condition during the occupancy of the property by the United States Government, and we need express no opinion thereon, as by the instructions asked for by the appellants this period is excluded.

The theory of the appellee's *second* prayer, and his contention is, that he was not bound by this covenant or condition on his part, unless the hotel and grounds were maintained in good repair by the lessor, and kept in a condition suitable for a respectable bathing or watering place; and it has been argued that the lease contains an implied covenant to this effect on the part of the lessor, the performance of which is a condition precedent to the obligation on the part of the lessee to keep the cottage in repair.

"The tendency of modern decisions is not to imply covenants which might, and ought to have been expressed if intended. A covenant is never implied that a lessor will make any repairs." *Sheets vs. Selden,* 7 *Wall.,* 423, and cases there cited.

Here the supposed implied covenant on the part of the lessor, is not for repairs to the property demised; but relates to other property belonging to the lessor which, it is said, he bound himself by implication to keep in good order and repair. We have seen no case in which a covenant of that kind has been implied, and none has been cited by appellee's counsel.

This implication is based upon the recital in the lease, which states that "the lessor has established a watering or bathing place, and has caused it to be laid off in blocks and other ornamental shapes, with lots and avenues or common ways for the use of the same, as will appear by inspection of said grounds, and whereas it is his object that said grounds shall be kept in good order, and the said cottages in perfect repair,"—he then proceeds to lease to the appellee the cottage in question, reserving a nominal rent, with a covenant for renewal.

Here is no covenant either express or implied, that the lessor will build or maintain a hotel, or keep the grounds in good order suitable for a bathing place. Such was doubtless his intention, as expressed in the recital; but

this was intended only for his own benefit, and whether he would continue to do so or not, was left to depend entirely upon his own will.

It is said that it would be unreasonable to require the lessee to keep the cottage in repair, if the grounds and other buildings were not also maintained in good order, suitable for the purpose for which the place was established. But we must deal with the case according to the actual contract between the parties as expressed in the writing. As said by the Supreme Court in *Dermott vs. Jones,* 2 *Wall.,* 8: The law "regards the sanctity of contracts. It requires parties to do what they have agreed to do. If unexpected impediments lie in the way, and a loss. must ensue, it leaves the loss where the contract places it. If parties have made no provision for a dispensation, the rule of law gives none. It does not allow a contract fairly made to be annulled, and it does not permit to be interpolated what the parties themselves have not stipulated."

The language of Lord DENMAN, C. J., in *Aspdin vs. Austin,* 5 *Ad. & Ellis, N. S.,* (48 *Eng. C. L.,* 682,) is very apposite to the present case: "Where parties have entered into written engagements with express stipulations, it is manifestly not desirable to extend them by implications; the presumption is that having expressed some, they have expressed all the conditions. * * * * It is one thing for the Court to effectuate the intention of the parties to the extent to which they may have, even imperfectly, expressed themselves, and another to add to the instrument all such covenants as, upon a full consideration, the Court may deem fitting for completing the intention of the parties, but which they, either purposely or unintentionally, have omitted. The former is but the application of a rule of construction to that which is written, the latter adds to the obligations by which the parties have bound

themselves, and is, of course, quite unauthorized, as well as liable to great practical injustice in the application."

By the express terms of the lease, the appellee has covenanted that he will keep the cottage in perfect repair and tenantable condition, for the occupation of respectable persons, and it is expressly provided that all right of the lessee shall cease if he shall suffer the cottage to be out of repair, as aforesaid, for the period of any one bathing season during the continuance of the term. This covenant, on his part, is absolute, not dependent upon any covenant on the part of the lessor to keep the hotel and grounds in good order and repair.

It follows that there was error in granting the *second* prayer of the appellee, and that the *third* and *fourth* prayers of the appellants ought to have been granted.

The first prayer of the appellee was also erroneously granted, as it did not state correctly the obligation of the appellee according to the terms of the lease.

The *first* prayer of the appellants raises the question of variance between the premises described in the declaration and those described in the lease; and their *second* prayer is based upon the theory that the possession of the premises was not in the appellee, at the time of the alleged trespass.

It appears to us unnecessary to consider these prayers, as the opinion we have expressed upon the construction of the lease, in discussing the *second* prayer of the appellee, is conclusive against the right of the appellee to recover, the evidence clearly showing that the covenant, or condition, on his part has not been performed, and there being no evidence to the contrary. ·

The judgment of the Circuit Court must be reversed.

*Judgment reversed.*