## FRED M. KIRBY *vs.* A. E. O. WYLIE.

*Landlord and Tenant—Covenant in Lease Requiring Lessor to Rebuild in Case Premises are Destroyed by Act of God—Building Injured by Alterations and Natural Decay—Remanding Cause.*

In the absence of an agreement to that effect in the lease, a landlord is not required to repair the demised premises, or to rebuild the same in the event of their destruction.

An occurrence which is directly produced, in whole or in part, by human agencies is not an act of God, as that expression is used in the law.

When a building falls to pieces by gradual decay from natural causes, that is not an act of God without a stipulation in a lease, requiring the lessor to rebuild in case the building is destroyed by an act of God.

The lease of a building used as a store in a city, provided that in case it should be destroyed or rendered untenantable by fire, flood, the elements or act of God, at any time during the continuance of the lease, the lessor should, within a reasonable time, rebuild and restore the same at his own expense, the rent to cease until the premises are restored. Chiefly on account of the removal of a floor in the building and the making of openings in a wall and other alterations made in it by the lessee and prior tenants, the building became unsafe, and in pursuance of orders of the Building Inspector of the city it was torn down. Upon a bill by the tenant asking that the lessor be required to rebuild and restore the premises, *held*, that the destruction of the building was not caused by the elements, or an act of God, within the meaning of the covenant in

the lease, and that consequently the lessee is not entitled to the relief asked for.

This Court will not remand a cause for further proceedings except for reasons which appear upon the record at the time of hearing.

Consequently, when a bill is filed to require a lessor to rebuild a house which had been condemned by the Building Inspector, and the bill is dismissed because the lease did not impose such an obligation on the lessor, the cause will not be remanded to the end that the lessee may obtain a decree to reimburse him for the expenses incurred in removing the condemned building, when the bill does not ask for such relief and there is no evidence in the record that he had expended any money in removing the building.

*Decided June 25th, 1908.*

Appeal from the Circuit Court No. 2, of Baltimore City (GORTER, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*William S. Bryan, Jr.,* and *William C. Smith,* for the aplant.

The question whether the expression, "elements and the act of God," comprehends the total destruction of a building by order of the authorities, who based their action upon the natural death of a building by the disintegration of its parts through age, etc., has never been decided by this Court. Damages by the elements must be conceded to be a somewhat uncertain expression. Strictly speaking, the elements are the ultimate, indecomposible parts which unite to form anything; as the gases which form air and water are the elements respectively of those substances. Injuries to buildings by wind, rain, frosts and heat are spoken of as injuries by the elements, and all the ordinary decay from natural causes is classed in the same category. The case most directly in point is that of *Van Wormer* v. *Crane,* 51 Mich. 363.

A good many, if not all, of the cases reported on this subject arise because of the lessee's failure to return the premises to the landlord in as good condition as that in which the premises were received.

So it has been held in every hiring that the tenant will surrender the premises at the end of the term in as good condition as they were in at the commencement of the term, reasonable wear and tear and damages by the elements excepted, and that such obligation not only includes cases of ordinary or gradual decay, but extends to accidental injuries. *Myers* v. *Hussenbath*, 32 Misc. 717, 65 N. Y. Supp. 1026; *Spaulding* v. *Mumford*, 37 Mo. App. 281; *Allen* v. *Fisher*, 49 Atl. 477; *Ware* v. *Wagner*, 75 Ala. 188; *Gutteridge* v. *Munyard*, 7 C. & P. 129.

Our own Court of Appeals has held that under a covenant in the lease to keep a mill in necessary repairs, the covenantor is not bound to add improvements or make additions to the building. *Cooke* v. *England*, 27 Md. 14.

Where the tenant covenants to keep a mill in repair and to deliver it at the end of the term in as good order as tenant found it, natural wear and tear and fire excepted, if the mill falls in consequence of defective construction it is within the exception, and the tenant need not repair it. *Hess* v. *Newcomer*, 7 Md. 325; *Machen* v. *Hooper*, 73 Md. 369.

It appears, therefore from the aforegoing authorities in Maryland, which in fundamentals follow the line of reasoning laid down in the Michigan case, hereinbefore referred to, that the covenant upon the part of the landlord in the lease set out in these proceedings to rebuild, imposes a duty upon him in this case to fulfill that agreement.

It has been held that injury by the elements or by the act of God means injury without human agency. *Polock* v. *Proche*, 35 Cal. 422–3; *Porter* v. *Allen*, 8 Idaho, 398.

Without stopping to enquire whether the language used in the covenant of the lessor to repair was apposite or not, it is manifest, it is submitted, that the *intention* of the parties to the lease was that the lessor should repair or rebuild if the building became untenantable from any cause for which the tenant was not responsible. Whenever the intention of an agreement can be ascertained effect will be given to that intention, no matter how defectively or inartificially the parties may have

expressed themselves. *Commercial Association* v. *Mackenzie*, 85 Md. 136, 139.

That equity will compel the specific performance of a contract to erect a designated character of building seems settled by the authorities. *Busey McCurley*, 61 Md. 446; *Lawrence* v. *Saratoga R. Co.*, 36 Hun. 467; *Post* v. *West Shore R. R.*, 50 Hun. 301, affirmed in 123 N. Y. 581; *Gregory* v. *Ingwersen*, 32 N. J. Eq. 199; *Hubbard* v. *R. R.*, 62 Mo. 68; *Dayton R. R.* v. *Newton*, 20 Ohio St. 401.

If it once be conceded that under the terms of the covenant in the lease it was the duty of the lessor to repair and rebuild the property in controversy, the property being untenantable from the action of the elements, or the act of God, there was no adequate remedy at law for the appellant.

What would be the measure of damages for the breach of the covenant? Who could say what sum of money would be a just and adequate compensation to the lessee for the failure of the lessor to repair and rebuild? How can we measure the appellant's loss in dollars and cents? If there is no adequate or certain measure of damages which can be enforced at law, a remedy by way of specific performance exists in equity. *Sullivan* v. *Tuck*, 1 Md. Ch. 64; *Ross* v. *Union Pac. R. Co.*, 20 Fed. Cas. 1249; *Jones* v. *Parker*, 163 Mass. 564.

(*c*) But if we are wrong in this contention, and if there *is* an adequate remedy at law, still there being no exceptions to the jurisdiction of equity, this Court will grant relief by way of *compensation* for the breach of the contract. *Busey* v. *Mc-Curley*, 61 Md. 436; *Long* v. *Long*, 62 Md. 68; *Code of 1904*, Art. 5, sec. 37; *Girault* v. *Adams*, 61 Md. 12.

(*d*) And apart from all this, even if we assume, for the sake of the argument, that the covenant in the lease in no respect affects the rights of the parties, and that therefore, on common law principles, there was no obligation on either the lessor or lessee to repair the building, the bill should not have been dismissed.

The city authorities had condemned the building as unsafe under the authority derived from the city Code of 1906, Art.

3, secs. 150, 151, and from the Acts of 1906, ch. 797; and it was for the benefit and advantage of both the lessor and lessee, as holders of interests in the property, that the unsafe building should be taken down, and that the municipal regulations should be obeyed.

This being so, the holders of both interests, in the absence of any effective contract, should contribute towards bearing this expense.

In *French* v. *Richards*, 6 Philadelphia Reports, 547, the head note reads: "The tenant of premises destroyed by fire is entitled to contribution from the lessor for expenses incurred in removing a wall left in a dangerous condition." See also *Clark* v. *Gerke*, 104 Md. 526–529.

As further illustrations of this reasonable doctrine of the duty of all persons interested in a common property to contribute their share towards defraying any expense or charge necessary for the preservation or maintenance of the common property. See *Israel* v. *Israel*, 30 Md. 128; *Williams* v. *Harlan*, 88 Md. 1–5; *DeGrange* v. *DeGrange*, 96 Md. 609, 612.

*Charles E. Hill* and *John Philip Hill*, for the appellee.

"Damage by the elements" and "damage by the act of God" are convertible expressions in the law of leases. *X American & English Encyclopedia*, 895; *Harris* v. *Drake*, 40 Minn. 106.

Upon an exhaustive examination of the cases this construction is declared to be the law in a note in 53 *Lawyers Reports Annotated*, 673, where it is said: "An injury, to constitute damage by the elements, however, must have resulted from something extraordinary and unexpected, and not in the ordinary course of nature." 10 *American & English Encyclopedia*, 895; 3 *Words and Phrases*, 2,345.

In the following cases it has been decided that damage by the elements or damage by the act of God referred only to some sudden and unexpected action of the elements, and not to cases where defects existed at the time the lease was made, or where they result from deterioration due to ordinary use,

or from failure to make repairs.    *Achler* v. *Rehlinger*, 1 City
Court Rep. 79 (New York); *Meserole* v. *Hoyt*, 161 New York,
59 (1899); *Lansing* v. *Thompson*, 8 App. Div. (N. Y.) 54
(1896); *Harry* v. *Drake (supra)*; *Polock* v. *Proche*, 35 Cal. 416;
*Pope* v. *Farmers' Union & Milling Company*, 130 Cal. 139;
*Hatch* v. *Stampfer*, 42 Conn. 28.

The wording of the covenant upon which the plaintiff relies
bears out the above construction and indicates some sudden
and unexpected happening.    It is submitted that the words,
"that if the said premises are destroyed or rendered untenant-
able by fire, flood, the elements or act of God *at any time* prior
to the commencement of this lease," can only mean something
happening in the definite period of time between the making
of the lease and its going into effect, not something that had
been going on for fifty or seventy-five years prior to the mak-
ing of the covenant.    It would also seem that the words, "or
at any time during the continuance of the lease," means
something happening during this other stated period, and that
"or any renewal thereof," refers to still another stated time
during which the condition provided for by the covenant must
arise.    The words, "destroyed or rendered untenantable,"
would seem to refer to some sudden catastrophe, and this is
borne out by the further provision of the covenant that "all
rent reserved hereunder shall cease until said premises are re-
built or restored ready for occupancy again."

The above construction is also borne out by a comparison
of the covenant in question with that providing that lessee
"will at the end of his tenancy deliver up the said premises
hereby leased in good order and condition, ordinary wear and
tear, loss or damage by fire, flood and the elements or act of
God excepted."    In this covenant the terms, "ordinary wear
and tear" and damage by "the elements or act of God," are
so used as to show that in the lease, damage by "ordinary
wear and tear" is not included in, and is entirely different from
damage by the "elements or act of God."    The use of the
terms "wear and tear" in this covenant, and their omission in
the covenant for the performance of which the bill was filed,
bears out the above construction.

The lease itself imposes no obligation on the defendant to do anything upon the premises, except to keep the roof of the building in repair.   On the contrary, the lessee takes upon himself all responsibility and expressly covenants that he "will keep the premises in good order and condition at his own expense."   Under this covenant it was the duty of the lessee to put premises in good order and condition if they were not so at time of making the lease, and to keep them in such condition during the term.   The lessee is not relieved of this duty because of additional requirements of the building laws. *Taylor on Landlord and Tenant*, 9 ed., sec. 358; *Luxmore* v. *Robson*, 1 Barn. & Ald. 584; 18 *Am. & Eng. Ency.*, 252; *Stultz* v. *Locke*, 47 Md. 562; *Cook* v. *Chalmondeley*, 4 Drew, 326; *David* v. *Ryan*, 47 Iowa, 642.

It is also his duty to renew existing parts of the building when too old or decayed to answer their purpose.   *Cooke* v. *England*, 27 Md. 14; *Middlekauff* v. *Smith*, 1 Md. 329, and to rebuild walls where they settle and make the building untenantable.   *Luckrow* v. *Horgan*, 58 New York, 635; 18 *Am. & Eng. Ency.*, 252; *McHenry* v. *Marr*, 39 Md. 510; *Ramsay* v. *Wilkie*, 13 N. Y. Supp. 557.

By the general law of landlord and tenant the defendant is under no obligation to rebuild or restore, for a lessor is not required to rebuild where the premises are:   1.  Condemned by city authorities as unsafe.   *Clark & Stevens* v. *Gerke*, 104 Md. 504; *Ackler* v. *Rehlinger (supra)*; *Petz* v. *Voigt Brewery Company*, 116 Mich. 418.   2.  Rendered untenantable by reason of "wear and tear," "inherent defects," or any other cause. *Smith* v. *Walsh.* 92 Md. 518; *Hess* v. *Newcomer*, 7 Md. 315; *Machen* v. *Hooper*, 73 Md. 342; *Gluck* v. *Mayor & City Council*, 81 Md. 315.

The lessee takes the building as he finds it, with all its defects, and there is no implied warranty that it is fit for the purposes for which he leases it.   *Clark & Stevens* v. *Gerkes (supra)*; *Taylor, Landlord and Tenant*, sec. 175A; *Towne* v. *Thompson*, 68 N. H. 317.

In the case now before this Court the appellant took an old

and defective building after inspecting it thoroughly. Its condition was known to all parties and its chief value lay in its location. That this was in the minds of the parties is clear, for by the terms of the lease the lessee was expressly granted permission to make improvements, cut through the walls or even to erect a new building, and to connect the same with the adjoining premises on either side. It was provided that this new building should cost not less than $8,000.

The plaintiff has no standing in equity, for (*a*) A Maryland equity Court will not decree the specific performance of a general covenant to build, and (*b*) The plaintiff, having failed to perform his covenant "to keep the said premises in good order and condition at his own expense," cannot in equity demand the performance of the defendant's covenant to rebuild and restore.

BURKE, J., delivered the opinion of the Court.

The controlling facts in this case are practically undisputed. In March, 1901, Morris K. Wylie leased to Albert A. Brager the property known as No. 223 West Lexington street for the term of five years, beginning on the first day of January, 1905, and ending on the 31st day of December, 1909, at the annual rent of forty-five hundred dollars, payable in equal monthly instalments of three hundred and seventy-five dollars beginning on the 1st day of January, 1905. It was provided that the lessee should have the option of continuing the tenancy for another term of five years; provided he gave a written notice at least six months before the 31st of September, 1909, of his intention of availing himself of this option. The lease provided that the lessor should keep the roof of the building in good order and condition. This was the only obligation as to repairs assumed by the lessor, and in other respects the lessee covenanted to keep the premises in good order and condition. On the 8th day of November, 1902, Brager assigned his interest in the lease to Fred. M. Kirby, the appellant. Morris K. Wylie is now dead, and under his will and appropriate proceedings had in the Orphans' Court

his reversionary interest in this property became and is now vested in his widow, Mrs. A. E. O. Wylie, the appellee in this case.

In April, 1907, Mr. E. D. Preston, the building inspector of Baltimore City, under the power conferred upon him by the charter and the ordinances of Baltimore City, condemned the building, because in his judgment it was in a dangerous condition and a menace to the safety of persons and property. In consequence of this condemnation the building was torn down.

In the lease from Wylie to Brager there is found this covenant: "If the said premises are destroyed or rendered untentable by fire, flood, the elements or act of God at any time prior to the commencement of this lease or at any time during the continuance of this lease, or any renewal thereof, the said lessor shall within a reasonable time rebuild and restore the same at his own expense, and if such damage or destruction shall take place during the continuance of the term hereby created or in any renewal thereof all rents reserved hereunder shall cease until the said premises are rebuilt or restored ready for occupancy again."

In May, 1907, the appellant filed a bill of complaint in the Circuit Court No. 2 of Baltimore City based upon the above-quoted covenant. The ground upon which the bill rests is stated to be that on or about the 15th day of April, 1907, during the continuance of said lease, the premises became and were rendered untenantable by the elements and the act of God, of which the said landlord had due and timely notice, and demand had been made upon the said defendant to immediately and within a resonable time rebuild and restore the same at her own expense; but that the defendant had refused and still refuses to abide by and perform the covenants and agreements on her part as she had covenanted and agreed to do. The specific relief prayed for was that the covenants and agreements in the said lease might be specifically enforced, and that the defendant be decreed to, within a reasonable time at her expense, rebuild the said store No. 223 West Lexing-

ton street so that the same might be restored to a tenantable condition. There was also a prayer for general relief. Testimony was taken in open Court upon the issues made by the pleadings, and from the decree dismissing the bill the plaintiff has appealed.

The evidence shows that the building was an old one; that it was originally a dwelling house, and that by the removal of partition walls, and other changes and alterations, which weakened the structure, it was converted into a store. From 1892 to 1900 a Mr. Eisenberg occnpied the building as a dry goods store. He made extensive improvements to the property.· He put in a new front extending from the pavement to the roof, and removed the third floor, thus making the front a two-story building. A Mr. Pickering, who followed Eisenberg as a tenant of the property, also made a number of repairs and alterations in the building, and thereafter, in December, 1902, transferred his interests in the premises to the appellant, who occupied the premises as a store. Before Mr. Kirby took possession of the building two iron girders had been placed above the roof from the east to the west walls of the front building, and iron rods from these girders had been extended down to support the stair framing and second floor. These iron girders had been placed above that portion of the building from which the third floor had been removed. The west wall of the building, extending back for some distance from Lexington street, was a four-inch wall, and the rest of the wall was nine inches in thickness. There was a one-story structure, in a very bad condition, attached to the rear of the building, and used as a receiving department. After the plaintiff had acquired the assignment of the lease from Brager he made costly improvements to the property. Among other things he cut through the walls between numbers 223 and 225 West Lexington street, and made three large openings on the first floor, and one opening in the basement.

In the report made to Mr. Preston, the Building Inspector, by J. S. Busick and C. E. Stubbs, two employees of his office, the reasons why the building was condemned are stated as fo -

lows: "No. 223, on roof of ·this building, there are two iron beams supporting stair headers below which have not suffi- · cient bearing, these should be remedied at once; the roof girders are badly sagged and walls under one are cracked; there is also a break in east wall which seems to be a straight joint.   The joists of the receiving department are 3" X 10" Va. 2' centres-18' 6" span, good for only 54 lbs. per square foot."   Mr. Preston, when asked to state what he found the general condition of the building to be, replied: "Well, the general dilapidation ·and depreciation from age, weaf and tear, and affected more or less by frequent alterations which had taken place."   It is no doubt true, that decay and disintegra- tion resulting from old age had weakened the strength and affected to some extent the safety of the building; but it is by no means clear that it should, or would have been condemned, or caused to have been taken down for that reason alone."

It is apparent from the evidence that the unsafe condition of the building was really due to the insufficient thickness of a part of the wall, and more particularly to the removal of the third floor, and to the iron girders placed upon the top of the building and the cutting by the plaintiff of the large openings through the walls on the first floor.   The building was torn down by Mr. Bresman, and this witness, who was produced by the plaintiff, testified that the removal of the third floor weakened the building; that the taking away of this floor weak- ened the four inch wall, and that the heavy weight of the roof being on it the big girders pressed the wall out.   Asked to state what caused the dilapidated condition of the building he said: "Well, taking out that floor in the first place of course weakened the building; the ceiling, I judge, was about fifteen feet high and taking the joists out weakened the walls to a certain ex- tent and cutting those openings out, the four inch wall was not strong enough to hold the weight of the roof, and these two iron beams thrown across the roof twenty feet long, and these long rods down to the second floor was the cause of buckling this wall in the centre; it was only ·a matter of time for the whole thing to go down."   This witness, having taken the

building down, had the very best opportunity to learn the true causes of its unsafe condition. His evidence was corroborated in these particulars by witnesses Jones and Owens. Mr. Owens testified he thought that the weakening of the four inch west wall was mainly caused by cutting the large openings and the removal of the third floor.

Upon this state of facts the question to be decided is: Does this proof show that the premises were destroyed by the elements or act of God within the meaning of the covenant? If not the decree appealed against must be affirmed; because, confessedly, there is no other covenant by which the lessor assumed the obligation to rebuild, or restore the demolished premises. In the absence of an agreement to that effect the law imposes no such obligation on the landlord. This is a settled rule upon the subject. In *Gluck* v. *The Mayor and City Council of Baltimore*, 81 Md. 315, it is said: "The common law has always thrown the burden of repairs upon the tenant, although it imposes no obligation on him to make them unless he covenants to do so. *Taylor Land. & Ten.*, sec. 327. A covenant is never implied that the lessor will make them. *Moyer* v. *Mitchell*, 53 Md. 176; *Sheets* v. *Shelden*, 7 Wall. 423; *Gott* v. *Gandy*, 2 Ellis & Bl. 845; *Pomfret* v. *Ricroft*, 1 Wms. Saund. 321, 322N; *Kremer* v. *Cook*, 7 Gray, 550; *Doupe* v. *Genin*, 45 N. Y. 123. So unvarying is this doctrine that even a Court of equity will not compel the landlord to expend in making repairs the money received by him upon fire insurance policies after the destruction of the demised premises; unless he has expressedly agreed to so apply the proceeds. Nor will a Court of equity, when the premises have been burnt down and the landlord has collected the insurance, prevent him from suing for the rent, even though he refuses to rebuild, if he be under no covenant to repair."

It appears to be settled by the authorities that damage by the elements and damage by the act of God are synonymous, or convertible terms in the law of leases. The expression "act of God" in its broad and comprehensive sense includes many acts which the law does not recognize as sufficient to

exempt from responsibility. To the Christian mind many events and occurrences may be ascribed, either mediately or immediately, to an act of God, which the law would not regard as such. The legal meaning of the term is not perhaps susceptible of a definition which will include every case to which it may be applied. There appears, however, to be an unanimous concurrence in the authorities that an occurrence which is directly produced, wholly or partly by the intervention of human agencies, is not an act of God within the meaning of the law. In 1 *Amer. & Eng. Ency. of Law,* 584–585, will be found a number of definitions of this term, and instances of its application, and in every case the event, or occurrence declared to be an act of God was "something superhuman in contradiction to the act of man." It was said by this Court in *Fergussen* v. *Brent,* 12 Md. 31, that, "it is difficult exactly to find, in all cases, what is an act of God." "By the act of God, is meant a natural necessity, which could not have been occasioned by the intervention of man, but proceeding from physical causes alone, such as the violence of the winds, or seas, lightning, or other natural accidents;" per LORD MANS-FIELD, in *Forward* v. *Pittard,* 1 Term Rep. 27; 2 *Greenleaf on Ev.,* sec. 219. This definition is about as accurate and specific as, perhaps, any that could be given. It excludes all circumstances produced by human agency, so that if divers causes concur in the loss, the act of God being one, but not the proximate cause, it does not discharge the carrier."

As we have seen from the examination of the evidence that many of the causes which led to the condemnation and removal of the building were due, in a large measure, to changes and alterations made by the plaintiff and others, it cannot be successfully claimed, under the principle stated, that the building was destroyed by the elements, or the act of God, within the meaning of the law, and upon this ground alone the decree should be affirmed. But if it be conceded, that the destruction of the building was caused by gradual decay from natural causes, we have found no case, nor have we been referred to any, where it has been decided that a loss resulting from such

a cause was an act of God, within the meaning of the law. According to the adjudged cases the Courts have held that such an expression has reference to some sudden, unusual, or unexpected action of the elements.

The case of *Van Wormer* v. *Crane*, 51 Mich. 363, does not support the contention of the appellant, because the question as to whether ordinary decay resulting from old age was an act of God was not presented for decision in that case, although there are some general expressions in the opinion which indicate that the Court might have so held had the question been directly in issue. But that question did not lie so squarely in the pathway of the judgment that the case could not be adjudged without deciding it, and, therefore, it cannot be accepted as a judicial precedent upon the point. The loss in that case was caused by a fire, and the Court said that "no fault in connection with it is charged upon the defendant, and it seems to be taken for granted on both sides that the fire was accidental. We may, therefore, assume that the fire was one which occurred without traceable fault, and that it is to be classed as a calamity for which no one is responsible, except as he may have expressly undertaken to do so."

In *Harris* v. *Drake*, 40 Minn. 106, the Court laid down the safe and reasonable rule upon the subject: "Every case of damage to or destruction of human structures, not caused by animal force, may in one sense be said to be caused by the elements, as, for example, ordinary, gradual decay, but it would hardly be claimed that such a case would be within the meaning of the provisions of the lease. Or suppose, because of the manner of its construction, it should be proved, when winter arrives, that the basement was untenantable because of cold, it would scarcely be urged that this case came within the terms of the lease. We think that the language of the lease refers only to some sudden, unusual, or unexpected action of the elements occurring during the term, such as flood, tornadoes or the like; extraordinary disasters, not anticipated by either party, the efficient causes of which originated after the term began, and which either destroyed the building, or left it in a materially and

essentially worse condition than it was when leased." This rule has been applied by the Courts of New York, California, Connecticut and Mississippi. Being of opinion, for the reasons stated, that the appellee, under the facts disclosed by the record, is not bound by the covenant contained in the lease to rebuild the destroyed building, the decree must be affirmed.

Counsel for the appellant contended that the bill ought not to have been dismissed even if the Court found that the appellee was not bound to rebuild; but that there should have been a decree in his favor for the expenses incurred by him in removing the condemned building. But whatever the rights of the appellant might be in this respect they cannot be determined in this case; because there is no evidence in the record that he had expended any money in removing the building. We have no power to remand the cause except from matter appearing upon the record at the time of the reversal or affirmance of the decree from which the appeal is taken. *McCann et al., Administrators*, v. *Sloane & Calwell*, 26 Md. 82.

> *Decree affirmed with costs to the appellee above and below.*