WILLIAM H. STERN & SON, INC.*v.* MICHAEL J. REBECK.

[No. 171A17. Filed December 27, 1971. Rehearing denied
February 2, 1972. Transfer denied November 13, 1972.]

*Oscar Strom, Angelo A. Buoscio, Strom and Whitted,* of counsel, of Gary, for appellants.

*Charles R. Vaughan, Vaughan, and Vaughan,* of Lafayette, *James Clement, Steward and Clement,* of Gary, for appellee.

ROBERTSON, J.—This is a suit for damages for injuries to the plaintiff, Michael J. Rebeck, arising out of an accident allegedly caused by the negligence of defendant, William H. Stern & Son, Incorporated. Plaintiff's complaint alleged that on December 21, 1967, at approximately 4:30 p.m., he was walking in a southerly direction along the east side of Broadway Street, in Gary, Indiana, when a barricade which was serving as a temporary false front to a building being re-

modeled by defendant collapsed upon the plaintiff, thereby causing him to suffer severe injuries including, but not limited to, a nerve root injury to the cervical spine, paralysis of the arms, loss of control of the right leg, contusions over the entire body, and severe physical pain and mental suffering. Plaintiff's complaint further set forth allegations that the defendant was negligent in: failing to construct the false front so as not to collapse on pedestrians; failing to warn pedestrians of the dangerous conditions; failing to inspect the false front when it knew, or should have known, of its dangerous conditions; and failing to brace and secure the false front to prevent its collapse.

For the injuries allegedly caused by the defendant's negligence, the plaintiff prayed for a judgment in the amount of $100,000, later amended to $110,000. After a trial by jury, a verdict and judgment in the sum of $80,000 for plaintiff was rendered.

Defendant, thereafter, timely filed its Motion to Correct Errors, which specified the following alleged errors:

1. Denial of fair trial by irregularity in the proceeding of the court, jury, and prevailing party, abuse of discretion and misconduct of the prevailing party and his attorney.

2. Accident and surprise which ordinary prudence could not have guarded against.

3. Verdict was excessive and not supported by sufficient evidence.

4. There were errors of law and the verdict was contrary to law.

On October 28, 1970, defendant's Motion to Correct Errors was overruled, and defendant appeals the trial court's ruling on said motion.

The method of preserving error predicated upon misconduct of counsel is:

"(1) To promptly interpose and state their objection, if reasonably required, to the objectionable language or argument, and request the court to so instruct the jury as to counteract any harmful effect of such language or argument, and if granted, and such instruction was not sufficient to cure the error, follow such action by a motion to have the submission set aside; (2) to promptly object to the improper language or argument of counsel, and move to set aside the submission, stating reasons why the harm done could not be cured by any action the court might take in the matter."

*Lawson* v. *Cole* (1953), 124 Ind. App. 89, 92, 115 N. E. 2d 134, 136, and authorities cited therein.

An examination of the record reveals Stern's counsel failed to follow this procedure. Motions for a directed verdict were made at the close of plaintiff's case and at the close of all the evidence based upon the misconduct of opposing counsel. These motions refer to an attached affidavit that, after a diligent search, were not found in the record available to this court. The motions were couched in such general terms as to be of no value to this or the trial court in ruling thereon.

The accident and surprise of which Stern complains consists of certain medical records of Rebeck used at the trial. Stern had requested, six days prior to trial, a pre-trial conference. The morning of the trial, the judge and the attorneys held a discussion in chambers at which plaintiff agreed to share the medical reports then in his possession with the defendant. Rebeck had previously provided a medical report to Stern approximately three weeks prior to the trial.

A reading of TR. 16 sets out a time schedule suggested for the pre-trial conference. The tenor of TR. 16 indicates the procedure is to be utilized several weeks prior to trial, and not while the jury sits idly in the box awaiting the commencement of the case.

Neither did Stern ask for a continuance upon learning of the existence of this alleged new evidence, nor does the record reveal any attempt on the part of Stern to obtain medical

examination of Rebeck, or make use of discovery prior to the trial. The record would further show that Rebeck's doctor had not given counsel some of the material, and the remainder consisted of working file memoranda which had been summarized in the earlier medical report given to Stern.

Stern also addresses himself to the proposition that the award to the plaintiff of $80,000, under the facts of the case, was excessive. An excellent discussion of a similar contention, insofar as it pertains to excessive damages, is contained in *Lloyd* v. *Weimert* (1970), 146 Ind. App. 666, 257 N. E. 2d 851, at pp. 857, 858. In that opinion, ample authority is cited to show there will only be a reversal on the grounds of excess damages in the event the amount assessed appears to be so outrageous as to impress the court at first blush with its enormity. After an examination of the record we can not say that the jury in this case was motivated by prejudice, passion, partiality or corruption, or considered some improper element. While this court does take note of the fact that the damages awarded are liberal, the figure is not unsupported by the evidence, and does not appear to have been based upon the existence of any of the foregoing criteria. *Lloyd* v. *Weimert, supra,* and authorities cited therein.

Stern's 4th specification of error contains 16 sub-sections of alleged error. Four of these are duplicitous in that they repeat the previously discussed misconduct of counsel and the pretrial procedure. Still other sub-sections of the 4th specification of error fail to conform to the requirements of AP 8.3 (A) (7), by not being argued or by failing to cite supporting authorities.

It is alleged that the trial court erred in refusing to give to the jury defendant's tendered Instructions Nos. 2 and 7, which read as follows:

"DEFENDANT'S TENDERED INSTRUCTION NO. 2

"The jury is instructed that if you find the Plaintiff was injured as a result of an Act of God then you may not hold

the Defendant liable to damages to the Plaintiff. In that event the Plaintiff may not recover damages from the Defendant and your verdict should be for the Defendant."

"DEFENDANT'S TENDERED INSTRUCTION NO. 7

"If you should find from the evidence that the barricade was constructed by the Defendants in the usual approved manner of constructing the same and that an unusual condition arose in the form of an extremely high wind which caused the barricade to be blown over and if you find that the Defendant used reasonable care in the construction of said barricade then you may consider these matters in determining whether or not it was the negligence of the defendant or an Act of God that caused the incident complained of in Plaintiff's complaint."

It is a well established rule of law that in order for a defendant to be relieved from liability under an act of God defense, he must show that the plaintiff's injury was caused soley by an act of God. *Watts* v. *Evansville, etc., R. Co.* (1921), 191 Ind. 27, 129 N. E. 315. Defendant's instructions fail to inform the jury that such a showing is required. While the tendered instructions correctly state that the jury may find that the accident was caused by the defendant's negligence or by an act of God, they are defective in failing to apprise the jury of a third possible finding that the accident was caused by defendant's negligence operating in concurrence with an act of God, in which case the defendant would be answerable for all resulting damages. *Watts* v. *Evansville, supra.* Furthermore, even if defendant's instructions correctly stated the law, we do not feel that the act of God theory was an available defense under the facts of the case. In *Evansville, etc. R. Co.* v. *Scott* (1916), 67 Ind. App. 121, 147, 114 N. E. 649, this court stated the applicable rule as follows:

"As to the injury to appellee's real estate being caused by the 'act of God,' or being such that the exercise of ordinary care and prudence on the part of appellants in the

construction of the embankment and bridges that they could not have anticipated the same as here contended, it appears that before the 'act of God' can be made available as a defense there must be an entire exclusion of human agency from the cause that produced the injury, and that an occurrence that is produced partially by the intervention of human agency is not an 'act of God' within the meaning of the law. *Kirby* v. *Wylie* (1908), 108 Md. 501, 70 Atl. 213, 21 L.R.A. (N. S.) 129, 129 Am St. 451; *Michaels* v. *New York, etc., R. Co.* (1864), 30 N. Y. 564, 86 Am. Dem. 415.

'When the effect, the cause of which is to be considered, is found to be in part the result of the participation of man, whether it be from active intervention or neglect, or failure to act, the whole concurrence is thereby humanized, as it were, and removed from the operation of the rules applicable to the acts of God.' 1 C.J. 1174, and authorities cited."

The foregoing rule was more recently reaffirmed in *Cent. Ind. Ry. Co.* v. *Mikesell* (1966), 139 Ind. App. 478, 221 N. E. 2d 192. In the instant case, there is testimony in the record that the windows in the rear of the building which the barricade fronted were out and had not been bricked in by the defendant company at the time of the accident. The same witness further testified that the openings in the rear of the building would create a tunnel effect which would increase the velocity of the wind from the time it entered the building until it reached the barricade in the front. Thus, it appears from the evidence that there was not ". . . an entire exclusion of human agency from the cause that produced the injury. . . ." We must, therefore, hold that the defense of act of God was not available to the defendant and that any instruction based thereon was correctly refused.

Stern further objected to Rebeck's osteopath testifying as to his opinion as to the cause of Rebeck's complaint of the neck. The doctor had been qualified as an expert, and had treated this patient, therefore, it was not error to allow him to testify as he did.

The remaining two subsections of error deal with the exclusion of testimony referring to wind conditions existing

at the time and place in question, and the exclusion of the administrative Council of Indiana Rules and Regulations.

If exclusion of testimony regarding the gusts of wind was error, it was harmless, as defined by TR. 61. The error complained of occurred when Rebeck called Stern as a witness. The objection of being beyond the scope of direct examination arose when Stern's attorney was cross-examining him. Stern was not denied the opportunity of placing similar testimony in the record on his case in chief.

The admission of the regulations rested in the discretion of the trial court. There was no reference to statutory violations as a specification of negligence in plaintiff's complaint, therefore, it was irrelevant.

The last specification is that the court erred in giving an instruction of res ipsa loquitur. There was sufficient evidence in the record from which the accident, exclusive control on the part of Stern, the duty of care, and the accident not occurring in the ordinary course of events, to make the matter a question for the jury. The instruction was proper.

Having found no reversible error, the judgment herein is affirmed.

Sullivan, P. J., Buchanan and Lowdermilk, JJ., concur.

NOTE.—Reported in 277 N. E. 2d 15.