### EVANSVILLE, MOUNT CARMEL AND NORTHERN RAILWAY COMPANY ET AL. v. SCOTT.

[No. 9,049. Filed December 19, 1916. Rehearing denied April 20, 1917. Transfer denied March 15, 1918.]

1. PLEADING.—*Negligence.*—*Allegations.*—*Sufficiency.*—Where the acts charged are of such a nature and character as to be necessarily negligent, they will be so regarded, although not in terms characterized as negligent. p. 130.

2. APPEAL.—*Complaint.*—*Sufficiency.*—*Theory of Case Below.*—On an appeal from a judgment for damages to land caused by the obstruction of flood waters of a river, where throughout the trial a paragraph of complaint was construed by the trial court as proceeding upon the theory that the injury resulted from the obstruction of a natural watercourse, a theory in accord with its general tenor, the sufficiency of the paragraph to resist demurrer must be tested on such theory. p. 130.

3. WATERS AND WATERCOURSES.—*Surface Water.*—*Obstruction.*—*Right of Railroads.*—Each proprietor of lands may protect himself against the flow of surface water, regardless of the effect it may have upon the lands of others, and, as this rule is applicable to railroads, they have the right to interfere with the flow of surface water in constructing and maintaining embankments upon their right of way as a part of the roadbed. p. 130.

4. WATERS AND WATERCOURSES.—*Surface Waters.*—*Right to Repel.*—As a general rule, on the boundaries of his own land, not

interfering with any natural or prescriptive watercourse, the owner may erect such barriers as he may deem necessary to keep off surface water or overflowing floods coming from or across adjacent lands, and he will not be responsible for consequent injury to the lands of others, but such waters as fall in rain and snow on his land, or come thereon by surface drainage from contiguous lands, he must keep within his boundaries, or permit them to flow off without artificial interference, unless within the limits of his land he can turn them into a natural watercourse. p. 130.

5. WATERS AND WATERCOURSES.—*Streams.—Characteristics.—A* stream or watercourse must have a substantial existence, but it is not essential that it flow continuously throughout the year to be classified as such, the requirement being that it must have a bed and banks and that there is evidence of a permanent stream of running water. p. 132.

6. WATERS AND WATERCOURSES.—*Streams.—Surface Water.—What Constitutes.—*Where a river overflowed by reason of heavy rainfall, as it was accustomed to do from time immemorial, and spread out over a vast area of low land adjacent to its ordinary channel, but the whole body of water moved in a current with the main channel, apparently with the same velocity and forming one continuous body of moving water, the flood waters were not surface waters, so that a railroad could not avoid liability for damages resulting from the obstruction of such water by its embankments and insufficient bridges. p. 137.

7. WATERS AND WATERCOURSES.—*Flood Waters.—Obstruction.—Negligence.—Liability.—Proximate Cause.—*In an action against a railroad company for damages resulting from the obstruction of flood waters of a stream, where the answers to interrogatories disclosed that various railroad embankments were flooded by the waters of a river, and several of them washed out, causing a rapid rise of flood water on the upper side of defendants' railroad embankment, together with an accumulation of drift against the trestle work that formed the frame for the passageway for the water, the giving way of the embankments was not the proximate cause of injury to lands damaged by water being banked up by defendants' embankment and trestle, but intervening or concurring causes, so that defendant railroads were liable, since, to hold one liable for negligence, it is not necessary that the particular consequence of his act could have been anticipated by the exercise of ordinary care, it being sufficient if the probable injurious consequence could have been anticipated by reasonable care, and not the intervening agencies contributing to the result. p. 140.

8. WATERS AND WATERCOURSES.—*Streams.—Floods.—Act of God.—*

Where the Wabash river overflowed its banks, as it was accustomed to do each year from time immemorial, and by reason of heavy rainfall and artificial drainage emptying into the stream it reached a stage of thirty-one feet above low-water mark six miles away from the locality in litigation, whereas the highest stage previously recorded was twenty-eight feet, thirty-eight years before, the flood was not of such extraordinary character that injury to farm lands from water backed up by a railroad embankment must be regarded as caused by an "act of God." p. 141.

9. APPEAL.—*Review.—Answers to Interrogatories.—Presumptions Favoring Verdict.*—In determining the correctness of the trial court's action in overruling a motion for judgment on the jury's answers to interrogatories, notwithstanding the general verdict for plaintiff, the court on appeal will not look to the evidence actually given in the cause, but will search the pleadings to see, if from any evidence possible under the issues, the answers can be reconciled with the general verdict, and every reasonable presumption and inference deducible from the evidence which might have been admitted in support of the general verdict will be indulged in its favor. p. 141.

10. TRIAL.——*Verdict.—Scope.*—The general verdict for plaintiff is a finding in his favor upon all the issues involved. p. 142.

11. TRIAL.—*Interrogatories.—Submission.—Refusal.*—Where interrogatories material to the issues involved are requested to be given in proper form at the proper time, and are not covered by other interrogatories, it is reversible error on the part of the trial court to refuse to submit them to the jury. p. 143.

12. APPEAL.—*Review.—Harmless Error.—Exclusion of Evidence.*—Error, if any, in the exclusion of offered testimony was harmless, where the facts sought to be elicited from the witnesses were specifically found by the jury in answer to special interrogatories. p. 143.

13. TRIAL.—*Instructions.—Omissions.—Cure by Other Instructions.*—Where the trial court, in stating the issues, did not refer to the subject-matter of the affirmative paragraphs of answer, but the principles of law applicable thereto were covered by other instructions, and no burden was placed upon defendants by the instructions to establish the allegations of the affirmative paragraphs of answer, defendants got the benefit of the principles of law applicable thereto, and the failure of the trial court to refer to the subject-matter of such answers was harmless. p. 145.

14. APPEAL.—*Review.—Harmless Error.—Refusal of Instructions.*—Refusal of the trial court to give a tendered instruction to the effect that the law does not prescribe when the jury should answer the interrogatories submitted to them either before or

after agreeing upon the general verdict, and that they could be answered according to the jury's desire, was harmless. p. 146.

15. APPEAL.—Review.—Harmless Error.—Instructions Beyond Issues.—In an action for damages to land caused by the obstruction of flood waters of a river, error in the instruction in reference to the subject of surface water being involved, which was beyond the issues, was harmless to defendants, where the jury was fully informed upon the question of flood waters of the main channel and the answers to interrogatories disclosed that the injury was, in fact, caused by such waters. p. 147.

16. WATERS AND WATERCOURSES.—Flood of River.—Act of God.—What Constitutes.—In an action for damages to land due to the obstruction of flood waters of a river, the defense that the injury resulted from an "act of God" is available only when it appears that there is an entire exclusion of human agency from the cause that produced the injury, and an occurrence that is produced partially by the intervention of human agency is not an "act of God" within the meaning of the law. p. 147.

17. WATERS AND WATERCOURSES.—Streams.—Obstruction of Flood Waters.—Damage to Land.—Liability.—The injury to land due to the obstruction of flood waters of a stream by a railroad embankment was not one that was taken into account in measuring damage to the owner in a condemnation proceeding when the right of way was originally acquired, and such injury does not fall within the rule of law that there can be no recovery for injuries that are incident to the due and proper exercise of the corporate franchise of a railroad. p. 150.

18. RAILROADS.—Construction over Streams.—Duty of Railroad.—Under §5195, cl. 5, Burns 1914, §3903 R. S. 1881, railroad companies have a right to build their roads upon or across a watercourse, but they must refrain from interfering with its free use, so that security to property is afforded, and in this behalf they must restore the stream to substantially its former state so as not to impair its usefulness more than is absolutely necessary. p. 151.

From Gibson Circuit Court; *Simon L. Vandeveer,* Judge.

Action by Maggie Scott against the Evansville, Mount Carmel and Northern Railway Company and another. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*Lucius C. Embree, P. J. Kolb, Morton C. Embree,*

*L. J. Hackney* and *Frank L. Littleton,* for appellants.
*Luther Benson, Henry Johnson* and *Byron M. Johnson,* for appellee.

MORAN, P. J.—This appeal is prosecuted by appellants from a judgment against them in the sum of $5,000 in favor of appellee for damages to her real estate, consisting of 260 acres of farming land in Gibson county, Indiana, excepting therefrom that part included in the right of way of appellants. A review of the judgment is sought by appellants on the sufficiency of the complaint, consisting of three paragraphs: to withstand a demurrer for want of facts; on the action of the court in refusing to render judgment in appellants' favor on answers to interrogatories; and in overruling appellants' motion for a new trial.

Each paragraph of complaint discloses that the appellant The Evansville, Mount Carmel and Northern Railway Company, and the appellant The Cleveland, Cincinnati, Chicago and St. Louis Railway Company, are corporations owning a line of steam railway extending from Evansville, Indiana, to Mount Carmel, Illinois; that the Wabash river flows in a southwesterly direction and forms the western and northwestern boundary line of Gibson county, and that the country immediately east and southeast of the channel of the river for a distance of about five miles is low and level and has a fall to the west and southwest with the course and fall of the river, and to the east and southeast of the low and level country the surface of the ground rises precipitately forming a range of hills fifty to seventy-five feet high; the land of appellee is located within the low level tract of country and in time of freshets the lowlands form the

high-water channel of the river. From time imme-
morial during heavy and continuous rains within the
watershed of the river and its tributaries the waters
in the river are swollen so that the river rises above
its ordinary channel and flows in the high-water chan-
nel to a depth of from three to ten feet, having well-
defined banks and beds, requiring for the free passage
of such waters a much wider waterway than at other
times, and at such times the waters of the river flow
over upon the lands of appellee and the lands within
the high-water channel; that at such times such wa-
ters form a continuous body with the waters in the
ordinary channel of the river and flow with the cur-
rent and as a part of the river, which occurs once
or twice each year. That appellants in the year 1910
constructed their roadbed and tracks upon their right
of way across the low and high-water channel in a
general southeasterly and northwesterly direction,
passing through appellee's lands; the roadbed and
tracks are almost at right angles with the course of
the high and low-water channels of the river. As a
part of the roadbed four bridges were constructed
in this vicinity, one over the ordinary channel, and
three others, 1,500, 800 and 1,000 feet respectively in
length, located one, three and a half, and five miles
southeast of the ordinary channel of the river; the
remainder of the roadbed across the lowlands or
high-water channel was constructed of earthen em-
bankments; the bridges and embankments were so
constructed as to have a uniform grade on the top
and to a height of from twelve to fifteen feet above
the level of the surrounding lands; that the bridge
last mentioned is located where the right of way
passes through appellee's land.

The first paragraph alleges that the bridges and

embankments across the high-water channel of the river were wrongfully and unlawfully constructed and insufficient for the free passage of the water when flowing in the high-water channel, by reason of which the water would become ponded on the east side of the roadbed to a greater depth than on the west side, and thereby the water would be cast through the bridges in a concentrated volume with a swift and violent current over and upon the lands both immediately east and west of the bridges; that in March and April, 1913, the river was not sufficient to carry the waters that were cast therein, and the waters spread out over the low land, including appellee's, in a continuous body, flowing in a current of from three to ten feet deep, and but for the embankment and bridges would have naturally flowed off appellee's land without injury thereto, but by reason of the embankments and insufficiency of the bridges, wrongfully and unlawfully constructed and maintained, the waters became ponded on the right of way and stood four feet higher on the east than on the west side of the embankments, causing the water to pass through the bridge in close proximity to appellee's land with a violent current and in a concentrated volume over and upon appellee's land, thereby barren sand and gravel were washed out and deposited upon a part of appellee's land to a depth of from one to four feet; that the soil was washed off a part thereof, and appellee's land permanently injured to appellee's damages in the sum of $10,000.

The second paragraph alleges injury to the same tract of land covered by the first paragraph and charges that the bridges and embankments were wrongfully and negligently constructed so as to impede the natural flow of the water, which caused the

same to be cast through the bridges in a concentrated body with a swift and violent current upon the lands east and west of the bridges, and in the months of January, March and April, 1913, the main channel of the river was not sufficient to carry the water and the waters spread over the low land, including appellee's, to a depth of from three to ten feet, and but for the wrongful and negligent construction of the bridges and embankments would have passed off without injury to appellee. Hence, by reason of appellants' conduct appellee was damaged in the sum of $10,000.

The third paragraph seeks to recover for injury to a forty-acre tract of real estate located west of the right of way, which injury it is alleged was caused by the negligent and wrongful construction of the bridge and embankment, which gave way by reason of its insufficiency in strength when the water became ponded causing the water to flow down upon and across appellee's land in a concentrated volume and violent current, washing and depositing barren sand and gravel upon her land, permanently injuring the forty-acre tract to her damage in the sum of $3,000. Each paragraph alleges the freedom of fault on the part of appellee.

Upon the overruling of a demurrer to each paragraph of complaint, an answer of general dénial was filed to the complaint and a second and third paragraph of affirmative answer was addressed to the second and third paragraphs of complaint.

Nothing further need be said at this time as to the affirmative paragraphs of answer than that the second paragraph proceeds upon the theory that the flood in the early part of the spring of 1913 was of such an overwhelming force and magnitude as to be

recognized by the law as an act of God, and that the injury for which appellee sought to recover damages was caused by this act.   The theory of the third paragraph is that appellants purchased of appellee the right of way across her land before constructing their roads, and that the nature of the damages sought to be recovered is such as was compensated for by the purchase of the right of way.

The sufficiency of the first paragraph of complaint is vigorously assailed by appellants as being insufficient to withstand a demurrer for want of facts, in that the pleading discloses that the waters mentioned were surface waters, the flow of which appellants had the right to retard without becoming liable to appellee.

As we have seen, this paragraph charges that the bridge and embankment over and across what is designated as the high-water channel of the river are alleged to have been wrongfully and unlawfully constructed in that the bridges were insufficient for the free passage of the water when flowing in the high-water channel, and that the embankment obstructed and impeded the natural flow of the water through the high-water channel, and that injury resulted to appellee's real estate by reason thereof.   While appellee contends that this paragraph is good on the theory of the obstruction of a natural watercourse, she also insists that it is sufficient as against the demurrer whether the water that injured her real estate be regarded as mere surface water or that of a natural watercourse, and whether appellants were shown to be negligent or not, and further that if necessary to charge negligence, in order to make the paragraph good, the facts alleged are sufficient in this par-

ticular without the general charge of negligence. As to the latter contention, it seems to be well settled that where the acts averred to have been done are of such a nature and character as to be necessarily negligent, they will be so regarded, although not characterized as negligent. *Blue* v. *Briggs* (1894), 12 Ind. App. 105, 39 N. E. 885.

Throughout the trial of the cause, and by the instructions given to the jury, this paragraph of complaint was construed by the trial court as proceeding upon the theory that the injury complained of resulted by reason of the obstruction of a natural watercourse. This theory seems to be in accord with the general tenor of this paragraph, and it must be tested as to its sufficiency to resist a demurrer upon this theory.

Indiana has adopted and consistently followed the common-law rule in respect to surface water, which, in general terms, is that each proprietor of lands may protect himself against the flow thereof, regardless of the effect it may have upon the lands of other proprietors, and this rule being applicable to railroads, they have the right to interfere with the flow of the surface water in the constructing and maintaining of embankments upon their right of way as a part of the roadbed. *New Jersey, etc., R. Co.* v. *Tutt* (1906), 168 Ind. 205, 80 N. E. 420; *Clay* v. *Pittsburgh, etc., R. Co.* (1904), 164 Ind. 439, 73 N. E. 904; *Hill* v. *Cincinnati, etc., R. Co.* (1887), 109 Ind. 511, 10 N. E. 410; 40 Cyc 642, 643.

As a further elucidation of the general rule, we adopt the language employed in the case of *Cairo, etc., R. Co.* v. *Stevens* (1881), 73 Ind. 278, 38 Am. Rep. 139: ''With reasonably near approximation to accuracy, it may be laid down as a

general rule, that upon the boundaries of his own
land, not interfering with any natural or prescriptive
watercourse, the owner may erect such barriers as he
may deem necessary to keep off surface water or over-
flowing floods coming from or across adjacent lands;
and for any consequent repulsion, turning aside or
heaping up of these waters to the injury of. other
lands, he will not be responsible; but such waters as
fall in rain and snow on his land, or come thereon by
surface drainage from or over contiguous lands, he
must keep within his boundaries, or permit them to
flow off without artificial interference, unless within
the limits of his land he can turn them into a natural
watercourse.''

The right of appellants to ward off surface water·
from their right of way is well settled, so we direct
our attention to the character of the water described
in the paragraph of complaint under consideration as
to whether it is governed by the law applicable to
surface water or that of a natural watercourse.·

The pleading under consideration discloses that
after the main channel of the Wabash river had swol-
len by reason of the heavy rainfall, as it was accus-
tomed to do from time immemorial, so that it spread
out over a vast area of low land to the east, that this
vast body of water moved in a current with the water
in the main channel, and apparently with the same
velocity forming one continuous body of moving wa-
ter.   Appellants take the position that this vast body
of water spread out over the low lands must be classi-
fied as surface water and hence governed by the rule·
of law applicable thereto, and that the interference
with its flow would not create liability, while on the
part of appellee it is contended that it was flood
waters of the river flowing in a high-water channel,

and that under the facts pleaded it must be governed by the rule of law that governs the water of a natural watercourse, and that, governed by this rule, appellants are liable for the injury alleged to appellee's real estate.

It may be stated generally that a stream or watercourse must have a substantial existence, but it is not essential, in order for it to be classified as such, that it flow continuously throughout the year. *Schlichter* v. *Phillipy* (1879), 67 Ind. 201. That is, "to constitute a natural watercourse, there must be a bed and banks and evidence of a permanent stream of running water." *Weis* v. *City of Madison* (1881), 75 Ind. 241, 39 Am. Rep. 135; *Rice* v. *City of Evansville* (1886), 108 Ind. 7, 9 N. E. 139, 58 Am. Rep. 22.

There are numerous authorities to the effect that the flood waters of a stream must be regarded as surface water, and there are decisions in our own state that seem to be in accord with the holdings of other jurisdictions in this respect. *Schlichter* v. *Phillipy, supra; Jean* v. *Pennsylvania Co.* (1893), 9 Ind. App. 56, 36 N. E. 159; *Jack* v. *Lollis* (1894), 10 Ind. App. 700, 37 N. E. 728; *Taylor, Admr.,* v. *Fickas* (1878), 64 Ind. 167, 31 Am. Rep. 114; *Cairo, etc., R. Co.* v. *Stevens* (1881), 73 Ind. 278, 38 Am. Rep. 139; *Weis* v. *City of Madison, supra; Benthall* v. *Seifert* (1881), 77 Ind. 302; *Shelbyville, etc., Turnpike Co.* v. *Green* (1885), 99 Ind. 205. In view of the innumerable decisions and want of harmony of the courts as to the character of water that should be regarded as surface water, and the character of water that should be regarded as of a natural watercourse or flood waters of a stream, an attempt to classify the same would lead to endless confusion.

In *New York, etc., R. Co.* v. *Hamlet Hay Co.* (1897), 149 Ind. 344, 47 N. E. 1060, 49 N. E. 269, the court, passing upon the sufficiency of the complaint, which contained, among others, the following allegation: " 'From time immemorial, during the springtime and rainy seasons of the year, the waters in said river are swollen by rains and freshets, so that the river rises above its ordinary channel and flows in high-water channels, having well-defined beds and banks, and requires for the free passage of the water a much wider waterway than in other seasons of the year,' " held the railroad company liable upon the theory of obstructing a natural watercourse where injury resulted from the water that flowed in what was termed the high-water channel. The complaint in the case at bar is similar in many respects to the complaint in the Hamlet Hay Company case. Appellants regard this decision as unsound so far as it appears to be out of harmony with the foregoing decisions that treat the flood waters of a stream as falling within the rule of law governing surface water. However, in the more recent decisions of *Northern Ind. Land Co.* v. *Brown* (1914), 182 Ind. 438, 106 N. E. 706, and *Vandalia R. Co.* v. *Yeager* (1915), 60 Ind. App. 118, 110 N. E. 230, the Hamlet Hay Company case has been followed.

In the case of *Cairo, etc., R. Co.* v. *Brevoort* (1894), (C. C.) 62 Fed. 129, 25 L. R. A. 527, Baker J., in passing upon the question whether flood waters of a stream should or should not be regarded as surface water, held, in analyzing *Taylor, Admr.,* v. *Fickas, supra,* the parent case in this state upon the subject, that the court was in error in assuming in that case that the flood water of the Wabash river in times of ordinary floods was surface water, and further said:

"If the water of the Wabash river, in times of ordinary floods, is surface water, a railway company would be under no obligation to provide an outlet for its superabundant water at such times; and the ultimate result would be that all the company need do is to provide outlets sufficient to pass the water which flows in the channel, and within its banks. Such, however, is not the measure of its duty. Either the cases which hold that a railroad company, in bridging a stream, must provide a sufficient waterway for the passage of superabundant water which flows into and down the stream in times of ordinary floods, are unsound, or else the doctrine of *Taylor* v. *Fickas, supra,* and of the cases which follow it, cannot be upheld."

In *Mitchell* v. *Bain* (1895), 142 Ind. 604, 42 N. E. 230, which was written before the Hamlet Hay Company case, Monks, J., speaking for the court said: "A stream does not cease to be a watercourse and become mere surface water because at a certain point it spreads over low ground several rods in width and flows for a distance without a defined channel or banks before flowing again in a definite channel."

In the case of *O'Connell* v. *East Tenn., etc., R. Co.* (1891), 87 Ga. 246, 13 S. E. 489, 13 L. R. A. 394, 27 Am. St. 246, it was held that, in determining whether the overflow waters of a stream were to be classed with surface water depended upon the configuration of the country and the relative position of the water after it had gone beyond the usual channel, and that if the flood waters became severed from the main current, or left the stream never to return and spread out over the lower ground, it became surface water; but if it formed a continuous body with the water flowing in the ordinary channel, or if it departed from

such channel *animo revertendi,* presently to return as by recession of the waters, it should be regarded as still a part of the river, that a stream may have a flood channel to retain the surface waters until discharged by the natural flow, and further that there is no distinction in principle or authority between obstructing the flow of a stream at its ordinary level and in time of flood. This latter proposition seems to find support in numerous authorities, among which are *Burwell* v. *Hobson* (1855), 12 Grat. (Va.) 322, 65 Am. Dec. 247; *Crawford* v. *Rambo* (1886), 44 Ohio St. 279, 7 N. E. 429; *Fordham* v. *Northern Pacific R. Co.* (1904), 30 Mont. 421, 76 Pac. 1040, 66 L. R. A. 556, 104 Am. St. 729; *Mccomber* v. *Godfrey* (1871), 108 Mass. 219, 11 Am. Rep. 349.

In the latter case it was said: "But where, owing to the level character of the land, it spreads out over a wide space without any apparent banks, yet usually flows in a continuous current, and passes over the surface to the lands below, it still continues to be a watercourse. *Gillett* v. *Johnson,* 30 Conn. 180. If the plaintiffs had erected a barrier to keep it from their land, it would evidently have accumulated, by its natural and regular flow, upon defendant's land; not merely when there were melting snows or rains, but at all ordinary seasons."

In the Hamlet Hay Company case, *supra,* the following language is used: "There is no doubt that flood water which leaves the channel of a stream and spreads out over the adjacent lands, running in different directions or settling in pools or flats, ceases to be a part of the stream and becomes in effect surface water. Such, however, was not the character of the waters here alleged to have been thrown back upon appellee's land."

After collecting the authorities on this subject, it was held in *Vandalia R. Co.* v. *Yeager, supra,* that flood waters flowing without the ordinary channel under some circumstances should be classed as a part of a stream rather than surface water, and waters overflowing the natural channel flowing down the course of a stream in a uniform current with it, and at such regular intervals as to form what is known as a high-water channel, should be classed as waters of a stream rather than as in part surface water, and that under some circumstances a stream is classed as a natural watercourse in the absence of a well-defined channel as the term is usually understood, as where the water in its course spreads over a considerable breadth of land.

The authorities of this state, which appear at first blush to be out of harmony with the Hamlet Hay Company case, are not in fact so upon a close analysis, as in that case the complaint disclosed that the flood waters were connected with the water of the ordinary channel and were flowing in uniformity therewith as one current. The facts in neither of the earlier cases were similar in this respect. If all the waters referred to in the paragraph of complaint under consideration flowing to the east of the ordinary channel of the river and in uniform current therewith be regarded as purely surface water, then appellants or any other landowners within this low, level territory adjacent to the river and similarly situated could erect barriers to ward off the flowing waters from their lands and thus stop its flow, and, so long as they were successful in controlling it, the adjoining landowners, no matter how affected by the accumulation, could not complain.

In Gould on Waters, §264, the rule seems to be

clearly and logically stated by the author as follows: "In broken regions of country, intersected by long, deep ravines, or surrounded by high, steep hills or bluffs, down which large quantities of water from rain or melted snow rush rapidly, often attaining the volume of a small river, and usually following a well-defined channel, the common-law rule applicable to ordinary surface waters do not necessarily apply. In many respects such waters partake more of the nature of natural streams than of ordinary surface water, and, to a certain extent, are governed by the same rules; and no one has the right to obstruct or divert such waters so as to cast them upon the property of others to their injury."

Under the rule of law announced in the Hamlet Hay Company case and the authorities in harmony therewith, the first paragraph of complaint states a cause of action, as against the objections urged. *Vandalia R. Co.* v. *Yeager, supra.*

6.

The character of the water as collected in a body and its movement and relation to the valley were collected and main channel is characterized in the same language in the second and third paragraphs of complaint as that of the first paragraph, that is the pleader in drafting the second and third paragraphs of complaint used the exact language employed in the drafting of the first paragraph, except in the particular that the second and third paragraphs of complaint disclose that out of the negligent diversion of the flood waters of the river on the part of appellants, the real estate described in the respective paragraphs was injured. It is obvious that all of the waters mentioned in the various paragraphs of complaint consist of the flood waters of a stream, and what was said in the disposal of the error predicated upon the over-

ruling of the demurrer to the first paragraph of complaint is applicable to that of the second and third paragraphs, each of which, when measured by the authorities cited and the facts pleaded, states a cause of action.

The interrogatories and answers thereto, which form the basis of appellants' next assignment of error, are very numerous and cover a wide. field as to the facts found, among which are that the Wabash river overflows its banks from time to time, and when said river and its tributaries overflow, the waters commingle and flow with the course of the main channel of the river and at certain times of the year, and especially was this true in March, 1913, the volume of water spread out over a vast tract of low level country to the southeast of the main channel of the Wabash river for a distance of several miles to a point where there is an abrupt incline which formed the bank; that by the government gauge located at Mount Carmel, Illinois, which is about six miles north of the lands of appellee, the water reached an altitude of thirty-one feet above low-water mark, and it had not theretofore at any time reached this altitude; that the highest water known prior to March, 1913, was in August, 1875, which was twenty-eight feet above low-water mark; that the appellants' railroads cross the main channel of the Wabash river and the low, level country in which appellee's land was located diagonally to the southeast; that the roadbed was elevated several feet across this low level tract of land, being of an earthen embankment, except the part occupied by the bridges; that through the low level land and running in an easterly and westerly direction and several miles above appellants' roadbed was located the Southern Indiana Railroad

Company's railroad, with an embankment of an average height of eight feet, and about eight miles above this line of railroad was located the Chicago and Eastern Illinois Railroad Company's railroad with a similar embankment; that on March 28, 1913, the embankments of the Chicago and Eastern Illinois Railroad Company and the Southern Railway Company washed out, releasing a large volume of water that had been ponded above, which, after being released, flowed in a southwesterly direction with the course of the Wabash river, thus causing the water to rise on the upper side of the embankment of appellants' railroads at a rate of twelve inches per hour, and continued so to rise until eleven o'clock a. m., March 29, 1913, when the flood waters flowed over the embankment, and, by reason thereof, the embankment gave way in close proximity to appellee's land, which caused a part of the injury complained of by appellee; that during the afternoon of March 29, the flow of water was some ten feet deep over appellee's land, flowing in a southwesterly direction with a swift current; that over the main channel of the river was a steel bridge 1,156 feet long, and immediately east of this bridge was a pile trestle 1,066 feet long, and some distance east of this point was a second opening in the embankment built of a pile trestle 1,498 feet long, and farther to the east was a similar structure 810 feet long, and in close proximity to appellants' land was a similar opening 1,003 feet long, through which passed what is known as the Sommers ditch, and this ditch carried the waters of another stream known as Indian Camp Creek; that on the afternoon of March 29, 1913, drift collected against the trestle openings, which drift at the various trestles impeded the flow of water through the same, and on March 29

and 30, 1913, the waters in the vicinity were more than two feet higher than they had been in August, 1875, and during the afternoon of March 29, 1913, the waters that flowed across appellee's land increased in depth ten inches per hour.

Appellants insist that the answers to interrogatories disclose that the water that was responsible for the injury complained of was surface water, and that the verdict in part at least is based upon the first paragraph of complaint, and that as to the separate motion for judgment on answers to interrogatories on the first paragraph of complaint, it should have been sustained. We need not enter upon a discussion whether a separate motion of this character is contemplated by our practice, as it is not essential to a disposition of the question.

The facts found by the answers to interrogatories, so far as they relate to the character of the water that caused the injury, substantially follow the facts set forth in the complaint, and what we have heretofore said relative to the water being classed as surface water or governed by the law that governs the water of a natural watercourse is applicable to the question presented on the motion for judgment on answers to interrogatories in this respect.

The giving way of the embankments of other railroads several miles above that of appellants, the rapid rise of the flood on the upper side of appellants' railroad, together with the accumulation of drift against the trestle works that formed the frame of the opening or passageway for the water, as disclosed by the answers to interrogatories, do not necessarily disclose the same to be the proximate cause of the injury, but intervening or concurring causes. It is not necessary, in order to

hold one liable for negligence, that the particular consequence could by the exercise of ordinary care have been anticipated; the particular consequence need not in fact be anticipated. It is sufficient, if the probable injurious consequence that occurred could have been anticipated by the exercise of reasonable care, and not the number of intervening agencies that might arise in the bringing about of such consequences. In other words, it is sufficient if the injurious consequence was likely to occur by reason of the condition of the place and the surroundings. *W. McMillen & Son* v. *Hall* (1915), 59 Ind. App. 545, 109 N. E. 424; *Cincinnati, etc., R. Co.* v. *Armuth* (1913), 180 Ind. 673, 103 N. E. 738.

It cannot be said from what is disclosed by the answers to interrogatories that, as a matter of law, the flood was of such extraordinary character 8. that the injury must be regarded as caused by the "act of God."

There is no such conflict between the answers to interrogatories and the general verdict as to authorize judgment being rendered in favor of appel- 9. lants thereon, especially in view of the oft-repeated rule that this court will not look to the evidence actually given in the cause, but will search the pleadings to see if from any evidence possible under the issues, such answers can be reconciled with the general verdict, and every reasonable presumption and inference deducible from the evidence which might have been admitted in support of the general verdict will be indulged in its favor. *Baker* v. *Baltimore, etc., R. Co.* (1915), 61 Ind. App. 454, 112 N. E. 27.

This brings us to the error predicated upon the overruling of appellants' motion for a new trial,

which in turn questions the action of the court in re-
fusing to submit certain interrogatories tendered by
appellants to be answered by the jury; in the admis-
sion and rejection of certain evidence; in giving and
refusing to give certain instructions; that the verdict
is not sustained by sufficient evidence, and is contrary
to law.

Appellants tendered, at the proper time, 154 inter-
rogatories, and requested the court to submit the
same to the jury to be answered in the event it re-
turned a general verdict. The court upon motion of
appellee struck out eleven of the interrogatories, and
in this behalf appellants contend that their rights
were prejudiced thereby. The rejected interrogato-
ries solicited answers as to where the Wabash river
emptied into the Ohio river, whether the Ohio river
did overflow its banks in certain seasons of the year,
whether the water that moved with the channel of the
Wabash river at the time of the injury was not the
commingled waters of many rivers and streams that
flowed into this great body of water in the vicinity
of appellee's real estate, whether the flow of the
water alleged to have caused the injury was not im-
peded by the accumulation of drift at the various
waterways in the embankment of appellants' roadbed
as described in the complaint, whether the breaking
of the embankment caused gravel and sand to be
washed upon appellee's land.

As to the interrogatories which solicited answers
as to whether the water that formed this large body
was not the commingled waters of many
streams, this fact is covered by the interroga-
tories that remained in the record, and which
were answered by the jury. Likewise this is true as
to whether or not the drift did not impede the flow of

the water through the passageways or openings in the embankments. The general verdict found for appellee upon all the issues.as well as each essential fact in the various paragraphs of complaint. *Barr* v. *Sumner* (1915), 183 Ind. 402, 107 N. E. 675, 109 N. E. 193; *Evansville, etc., Traction Co.* v. *Spiegel* (1911), 49 Ind. App. 412, 94 N. E. 718, 97 N. E. 949. And had the interrogatories, which were rejected by the court, been submitted and answered favorable to appellants, the answers would not, when considered alone, nor in connection with the answers returned to the interrogatories submitted to the jury, be sufficient upon which to render judgment notwithstanding the general verdict. In our examination of this question we have been mindful that when interrogatories material to the issues involved are requested to be given in proper form at the proper time, and are not covered by other interrogatories, it is reversible error on the part of the trial court to refuse to submit the same to the jury. *McCullough, Admr.,* v *Martin* (1894), 12 Ind. App. 165, 39 N. E. 905; *Helton* v. *Wells* (1895), 12 Ind. App. 605, 40 N. E. 430; *Clegg* v. *Waterbury* (1882), 88 Ind. 21; *Miller, Admr.,* v. *White River School Tp.* (1884), 101 Ind. 503. This rule cannot be invoked in the case at bar.

As to the questions presented for consideration upon the rejection of certain evidence, it is disclosed by appellants' brief that as to three of the witnesses in the cause, certain facts were elicited, which went to the giving way of the embankment of the Chicago and Eastern Illinois Railroad at Hazelton, Indiana, the location of the embankment, the manner of giving way, and the action of the water after it was released; the condition of the railroad embankment of the Southern Railroad Company

after the flood of 1913; and as to the difference in elevation of the waters of the Wabash valley during the flood of 1875 and that of 1913. The answers to interrogatories by the jury cover the same facts elicited from each of the witnesses respectively, and, from the nature of the interrogatories propounded, the information received was favorable to appellants, that is the jury was in possession of sufficient information so as to be able to answer the interrogatories propounded which covered this particular field of inquiry.

This court held in *City of Indianapolis* v. *Williams* (1914), 58 Ind. App. 447, 108 N. E. 387, that where complaint was made of the exclusion of offered testimony, and the facts sought to be elicited from the witnesses were specifically found by the jury in answer to interrogatories, the error was harmless even though the excluded evidence was otherwise competent.

A consideration of the remaining questions raised as to the admission and rejection of evidence discloses no error upon which to predicate a reversal of the judgment. It is insisted by appellants and with much earnestness that of the number of instructions given by the court of its own motion, error was committed in the giving of fifteen of the same, and that this is likewise true as to six of the instructions given at the request of appellee, and that the court erroneously refused to give thirty-four instructions as tendered by appellants. Many of the instructions given and to which objections are made announce principles of law in harmony with what was said in passing upon the sufficiency of the first paragraph of complaint to state a cause of action, upon the theory that the waters alleged to have caused the injury

should under the facts there stated be regarded as the waters of a natural watercourse, and the proof seems to make the same applicable. Many of the instructions tendered by appellants, and of which objections are made because not given, are not in harmony with the principles of law thus announced, but proceed upon the theory that the flood waters of a stream are surface water and should be so treated.

We will not incumber this opinion by reiterating what has been said in this respect, for, if correct, it answers the objections raised as to the giving and refusing to give instructions that relate to the flood water of a natural watercourse.

In stating the issues, the second and third paragraphs of answer were not referred to in any manner. These answers are affirmative in their nature, and it is urged that the failure of the court to include these answers within the purported statement of the issues brings the action of the court in this respect within the principle of law that where an instruction attempts to set out all of the essential elements necessary to a recovery and fails to do so a reversible error is committed. *Maxon* v. *Clark* (1899), 24 Ind. App. 620, 57 N. E. 260.

At the close of instruction No. 1 as given by the court of its own motion, and the one referred to by appellants as purporting to state the issues, is the following: "To each of the paragraphs of complaint the defendant has filed a general denial. Upon the issues thus formed the burden is placed upon the plaintiff to establish by a fair preponderance of the evidence all the material averments of at least one paragraph of her complaint substantially as alleged therein in order to recover in this action."

Preceding what is here said, the substance of the different paragraphs of complaint is set forth. So it can readily be seen that this instruction dealt only with the issues joined upon each paragraph of the complaint.

While the subject-matter of the affirmative paragraphs of answer is not referred to in the general statement of the issues, the principles of law applicable thereto are covered by the instructions No. 12 given by the court of its own motion and Nos. 8 and 14 tendered by appellee.

No burden was placed upon appellants by the instructions to establish the allegations of the paragraphs of answer under consideration; however, appellants got the benefit of the principles of law applicable thereto evidently upon the theory that the proof necessary to support the same was admissible under the general issue. The action of the court in this connection appears to be quite favorable to appellants, at least they were not harmed thereby.

Appellants' instruction No. 55 as tendered is in effect that the law does not prescribe when the jury should answer the interrogatories submitted to them either before or after agreeing upon the general verdict; that the same could be answered according to the jury's desire. Complaint is made by appellants of the refusal of the court to give this instruction. The precise question here involved has recently been considered in the case of S. W. Little Coal Co. v. O'Brien (1916), 63 Ind. App. 504, 113 N. E. 465, 114 N. E. 96. Nothing further need be said than that the refusal of the court to so instruct the jury was harmless.

Concluding, as we have, that each paragraph of complaint deals with the flood waters of a natural

watercourse, and that the same is governed by the rules of law that are applicable thereto, there is, strictly speaking, no issue involving injury caused by the collecting of surface water in a volume or channel and unlawfully discharging the same, and what has been said in the instructions given to the jury in reference to surface water being involved is beyond the issues. When the whole context of the instructions, which refer to an issue of surface water being involved, is considered, it is plainly disclosed by the language employed in the drafting that they in fact deal with the flood waters of the river moving in a current with that of the main channel, and further, by the answers of the jury to interrogatories, it is disclosed that the waters that caused the injury were in fact the flood waters of the main channel and flowing concurrently therewith. Upon the question of flood waters and upon every other branch of the case involving the same, the jury was fully informed as to the law applicable thereto. It affirmatively appears that no harm resulted to appellants by what was said in the instructions as to the subject of surface water being involved. *Abelman v. Haehnel* (1914), 57 Ind. App. 15, 103 N. E. 869. To hold otherwise on this branch of the case would be to sacrifice merit for purely technical procedure.

This leaves for disposition the sufficiency of the evidence to sustain the verdict, and as to whether the verdict is contrary to law.

As to the injury to appellee's real estate being caused by the "act of God," or being such that the exercise of ordinary care and prudence on the part of appellants in the construction of the embankment and bridges that they could not have anticipated the same as here contended, it ap-

pears that before the "act of God" can be made available as a defense there must be an entire exclusion of human agency from the cause that produced the injury, and that an occurrence that is produced partially by the intervention of human agency is not an "act of God" within the meaning of the law. *Kirby* v. *Wylie* (1908), 108 Md. 501, 70 Atl. 213, 21 L. R. A. (N. S.) 129, 129 Am. St. 451; *Michaels* v. *New York, etc., R. Co.* (1864), 30 N. Y. 564, 86 Am. Dec. 415.

"When the effect, the cause of which is to be considered, is found to be in part the result of the participation of man, whether it be from active intervention or neglect, or failure to act, the whole concurrence is thereby humanized, as it were, and removed from the operation of the rules applicable to the acts of God." 1 C. J. 1174, and authorities cited.

The river, the flood waters of which are under consideration, is a watercourse into which many creeks, streams and small rivers flow, and thereby a vast valley is drained. By reason of the improvements that have taken place in the way of denuding the land of its timber and by artificial drainage, the water produced by rainfall and melting snow is conveyed to the main outlet with much greater velocity than when the land was covered with timber, which had a tendency to retard its flow, and especially has the flow in this respect been accelerated by artificial drainage, all of which has a tendency and does cause the streams and rivers, and especially the main waterway, to rise with much more rapidity and to a higher altitude than formerly; and the real estate of which appellee's is a part has from time immemorial been submerged by the flood waters of the river in the

rainy season of the year, and when the water reaches a certain stage it moves in a current with the waters of the main channel. All of these facts must be regarded as within the knowledge of appellants when they built their roadbed.

In *Ohio, etc., R. Co.* v. *Ramey* (1891), 139 Ill. 9, 28 N. E. 1087, 32 Am. St. 176, it was said: "The principle, clearly is, that although a rainfall may be more than ordinary, yet if it be such as has occasionally occurred, and, it may be, at irregular intervals, it is to be foreseen that it will occur again, and it is the duty of those changing or restraining the flow of water to provide against the consequences that will result from it. It is within the knowledge of all who have long resided in this state, that our streams are occasionally subject, after intervals which are sometimes of shorter and at other times of longer duration, to great floods, occasioned by very heavy rainfalls, and their heights are known by those who have felt interested in them. Such rainfalls were not usual and ordinary, but they were unusual and beyond ordinary,—i. e., they were extraordinary; and yet it is just as certain that like rainfalls will occur in the future as it is that the same laws of nature by which they were produced, and the same conditions to be affected by those laws, will continue to exist in the future as they have in the past." A like principle was announced in *Gulf, etc., R. Co.* v. *Pomeroy* (1887), 67 Tex. 498, 3 S. W. 722, to the effect that if when the road was being built extraordinary inundations had occurred within the memory of men then living, their reoccurrence should be anticipated, and provision made against the danger likely to result therefrom, should a reoccurrence of the flood take place.

In the case at bar, the facts disclose that in the year of 1875 the flood water reached an altitude of twenty-eight feet above high-water mark, while in the flood of March, 1913, it reached an altitude of thirty-one feet. This measurement seems to have been taken quite a distance above appellants' roadbed. There is evidence to the effect that the water was four feet higher on the upper side of the roadbed than on the lower side, and there is likewise evidence to the effect that appellee's real estate was injured in January preceding the March flood, and for which injury a recovery was sought in connection with the damages alleged to have occurred later; there is nothing to show that the January flood was beyond that of an ordinary flood, so upon all of the facts and circumstances, the court could not have said, as a matter of law, that the injury was caused by the "act of God," or was such that by the exercise of ordinary prudence on the part of appellants they could not have anticipated in the construction of their roadbed in the manner in which they did that an injury was not likely to occur to appellee's real estate. So these questions were properly left to the jury to determine. 2 Farnham, Water Rights §577b; *Chicago, etc., R. Co.* v. *Schaffer* (1887), 26 Ill. App. 280.

The injury under consideration is not one that was taken into account in measuring the compensation to the owner of the real estate when the right of 17. way was originally acquired, as it does not fall within that rule of law that there can be no recovery for injuries that are an incident to the due and proper exercise of the corporate franchise of the railroad. Gould, Waters §256; 5 Thompson, Corporations (2d ed.) §5505. To build the embankment and bridges so as to suit appellants' own best conveni-

ence, and as of proper construction from their standpoint, was not sufficient. It was said in *New York, etc., R. Co.* v. *Hamlet Hay Co., supra*: "So far as concerns the claim made that the embankments were built in a careful manner, and so as to protect the charter rights of the appellant, we may say, as was said in the *Evansville, etc., R. R. Co.* v. *Dick,* 9 Ind. 433, that the embankments may have been erected in a proper manner, so far as appellant's interest is concerned, and still be constructed in such a manner as necessarily to injure appellee. In such case there can be no place for the maxim *damnum absque injuria,* and the appellee must have its right of action for damages."

This court held in *Southern R. Co.* v. *Weidenbrenner* (1915), 61 Ind. App. 314, 109 N. E. 926, that railroad companies become wrongdoers when they construct and maintain their bridges and embankments or trestles so as to obstruct watercourses, and that they become liable, subject to certain conditions, for injury resulting thereby, however prudently the bridges and embankments or trestles may have been constructed from their standpoint.

Railroad companies have a right to build their roads upon or across a watercourse (§5195, cl. 5, Burns 1914, §3903 R. S. 1881), but they must refrain from interfering with the free use of the same so that security to property is afforded, and in this behalf they must restore the watercourse to its former state. Of course, it cannot be restored in all respects to its former condition, and the law will be satisfied if it is substantially restored as not to impair its usefulness more than the additional use for railroad purposes renders absolutely necessary. *Pittsburgh, etc., R. Co.* v. *Greb* (1904), 34 Ind. App. 625, 73 N. E. 620; *Evansville, etc., R. Co.* v. *Carvener*

(1887), 113 Ind. 51, 14 N. E. 738; *Vandalia R. Co.* v. *Yeager, supra.*

The free passage of the water in the watercourse under consideration being interfered with by appellants so as not to afford security to appellee's property, as the statute provides, but on the contrary to the injury thereof, there was a direct violation of the statute, and a failure to observe a statutory duty, gives rise to a cause of action when invoked as by the first paragraph of complaint (*Evansville, etc., R. Co.* v. *Carvener, supra; Kelsay* v. *Chicago, etc., Railroad* [1907], 41 Ind. App. 128, 81 N. E. 522; *Cleveland, etc., R. Co.* v. *Stevens* [1911], 49 Ind. App. 647, 96 N. E. 493; *Graham* v. *Chicago, etc., R. Co.* [1906], 39 Ind. App. 294, 77 N. E. 57, 1055; *New York, etc., R. Co.* v. *Hamlet Hay Co., supra*), and this issue, as well as the issue of actionable negligence joined upon the second and third paragraphs of complaint, was rightfully left to the jury under the evidence, as disclosed by the record.

Each question presented by appellants' able and exhaustive brief has received careful consideration, and we feel that there is no error in the record that calls for a reversal of the judgment. The same is therefore affirmed. Felt, C. J., Hottel, McNutt, Ibach, Caldwell, JJ., concur.

NOTE.—Reported in 114 N. E. 649. Waters and watercourses: overflow from watercourse as surface water, 3 Ann. Cas. 208; liability of railroad company for diversion of surface water to land of another, Ann. Cas. 1914A 1292, 21 L. R. A. 593, 596; liability of railroad company for interference with watercourse by construction, 19 Ann. Cas. 336; right of landowner to repel surface water, 97 Am. Dec. 565, 40 Cyc 642. See under (5) 40 Cyc 554; (6) 40 Cyc 640, 40 Cyc 583; (8) 40 Cyc 575, 1 C. J. 1174, 1178.